2-24-0675, equal to the state of Illinois, since it's Appalachians, the Ernesto Valle defendant's account. The argument on behalf of the account is Abigail Olson. The argument on behalf of the Appalachians is Ernesto C. Bruce. Ms. Olson, you may proceed. May it please the Court. Good morning, Your Honors. Good morning. Good morning, Counsel. My name is Abigail Olson from the Office of the State Appellate Defender on behalf of the appellant Ernesto Valle. I'd like to focus my arguments today on the first issue regarding Ernesto's sentencing claim, but of course I can answer any questions Your Honors might have on the second. Could you speak up a little louder, please? I'd like to focus on the first issue of the sentencing claim, but I can answer any questions Your Honors might have on the second issue. We're asking this Court to reverse the trial court's dismissal of Ernesto's successive post-conviction petition and remand for a existing case law on this issue. We recognize that many courts have understood themselves to be bound by Illinois Supreme Court cases, Moore, Dorsey, and Clark, in the context of emerging adult proportionate penalties claims brought in successive post-conviction proceedings. However, we maintain that Moore's holding was much narrower than the trial court's reading of it, and that this case is distinguishable from Moore, Dorsey, and Clark. Specifically, all of those cases involved discretionary sentences. You said you talked about Moore. What about Spencer? In Spencer, the Court quoted Moore saying and restated that Miller does not provide a cause for successive petition. And that's a 2025 case. Right. So I think that most recent case, Spencer, the cases that it relies on as well, we think that it's all stemming from Dorsey, Clark, and Moore. And so we are agreeing that those cases aren't foreclosing our claim, that the reading is not, as the trial court thought and as the State argues. Particularly, as I was about to say, that the difference between discretionary and mandatory is, we argue, very important. So a lot of the cases that Spencer and more recent ones are based on are the ones that were based on discretionary sentences. In our case, Ernesto was given a mandatory de facto life sentence. So right there, we're arguing that this makes this case very different. But his age of almost 19, how does that factor in? I mean, the Supreme Court has repeatedly said that cutoff for juvenile versus adult is 18. Right. So for that, we point to Thompson, Harris, and House. And specifically, so in Thompson, you know, the line is different. It's where they open the door to this, right? So defendants not foreclosed from renewing it in a PC. And that's including those raised in a successive petition. And then same thing with Harris and with House. And again, I think that, sorry, I'm just trying to think of whatever. On another issue, you argue in your brief that the trial court did not consider, because the trial court said I'd find no factors in mitigation. Well, youth is not a statutory factor in mitigation under the code. It's not listed. Although defense counsel argued and said at his young age, he had a chance to get back and to be a benefit to society, and that's what I asked. So we presume the trial court considered the arguments of the sentence. He got the minimum sentence. And it was based upon the argument that defense counsel made. And he did have a record of misconduct while in pretrial custody, right? But he still got the minimum. And it was gang-related. There was no tack-on for the gang. He got, I mean, the judge gave him a substantial break. So I'll try to kind of take those step-by-step. So the first part about the sentencing, right? So, well, first of all, you know, one sentence from his defense attorney, he's young, you know, maybe he can be rehabilitated, but, I mean, that's not much. And then as you mentioned, the judge said, you know, mitigating factors, so youth wasn't mentioned. So again, sorry, to go back to the same point, but mandatory and discretionary is huge here because we're arguing that even if that, even if the sentencing judge considered youth very meaningfully and very, like, went on and on, and because it was a mandatory de facto sentence, that takes discretion out of it. So he didn't have a meaningful... My point is the trial court could have sentenced him to a much longer sentence because there were facts in evidence that would have justified a lengthier sentence. So the only, when you look at it, the only thing that was mitigating was his young age, which is what defense counsel argued. Well, so, I mean, he did get, he got the minimum sentence, but as we're saying, you know, after the expansion of the case law, Miller and then the Illinois cases that come from that, it's, you know, he was young. He wasn't a juvenile, but he was 18. And under that line of cases, he deserves those protections of meaningfully considering his youth in the way that Miller understood it. You say in your reply, Ruth, Spencer did not set an age limit on the definition of young adult defendants, quote, nor did it draw a bright line between the initial and its successive petitions. But the Supreme Court said clearly 18 is the dependent color for youth versus, for juvenile versus adult. And that seems to be a pretty bright line. The distinction is that that's for Miller, of course, yes, that was just 18, that was under 18. So we're going to know that the Illinois Supreme Court has not explicitly overruled Thompson, Harris, any of these cases. The door is still open to those cases. What about the state's argument that this argument is forfeited because there was no, sentencing wasn't even raised in the defendant's initial petition? I think that, again, because this is an evolving issue in this case law, Ernesto has been following this case law very closely and the evolving brain science, and that's part of our argument, is that it wasn't available before. Well, Roper was a 2005 case from the United States Supreme Court, which can be cited, even though it dealt with juveniles, it can be cited, or for people under age 18, it can be cited for the proposition that youth is a mitigating factor that must be considered. So again, because those were only for juveniles, a ruling at the time in 2008, Ernesto would not have, or an attorney would not have had the foresight that Illinois was going to open the door to the emerging adult claims. And, well, it wouldn't have been a legally cognizable claim at that time. And, in fact, I believe there are cases that tried after the Leon Miller case of Illinois that tried to make that argument, and it was frivolous because no law had been created yet to make that claim. The gist of your argument, correct me if I'm wrong, is that the Supreme Court has spoken relative to the parameters for juveniles up to the age of 18, and you are arguing that it should be extended to 18 and 11 months and so many days. Am I correct? That's correct, under Thompson and Harris. And the only way we would know for sure what the Supreme Court thought was if there was a case that suggested that either someone with the exact number of days that your client has to his age, or picked a higher number like 19 or 20 and said the law should apply as well to them as it does to 18-year-olds and below. So there are as required challenges. It is a case-by-case basis. So Harris specifically said right now 18 and 19 are the ages. Anything into the 20s has not really come up yet. So, yes, I think it is going to be a case-by-case basis. Do you see a metaphysical clash between the legislature and the judiciary insofar as Justice Burkett has pointed out that this defendant received the minimum sentence? And your argument is the minimum sentence is in error. It needs to be even lower, correct? Well, so we would just be arguing that Ernesto should have had the protections in place that wouldn't have been available to him in 2008. So, for example, you mentioned legislation. Now, this wasn't in place for Ernesto in 2008. But if he were sentenced 2019 and later, he'd be eligible for parole. And so that would be something. Basically, we're arguing that, yes, that it's unconstitutional. If we enunciate a principle that is more liberal or maybe less liberal, depending on your point of view, are we constrained to follow our Supreme Court and the U.S. Supreme Court? Or can we go beyond that? In other words, do we have the authority to say that 18 and 11 months is okay when it hasn't been stated by a higher court? Well, first, we're arguing that those cases aren't saying that, and that Harris and Thompson, and that there's still an avenue there. But the other thing is that this is up on appeal in the Supreme Court and people being McGee. This exact issue, particularly what I was mentioning about mandatory versus discretionary. And so, you know, hopefully there will be more clarity, and the Supreme Court will, you know, kind of clear up. Do you see that there is two aspects here? One is the concept of treating people of a young age differently than people who supposedly are more mature based upon their age, as opposed to vis-a-vis the legislative friction between what the legislature has determined to be the minimum sentence and the judiciary's decision that the legislature has exceeded its authority? Right, yes. And so there's more than one aspect to this situation that you're asking us to resolve in your favor. Right. I think, again, you know, it all comes back to Miller. And the fact that, you know, this emergent – there wasn't the science at that time to know that anyone 18, 14 – There was, there just wasn't as much. I mean, I read the New York University article. The white paper. Yeah, Justice for Emerging Adults after Jones, that article. Right. It was researched, but it was not as developed as it is today. I would say that, you know, because it was still developing, there was the beginnings of the research, but there was nothing that could meaningfully be applied or understood or accepted by the scientific community. What about the interest of finality and the interest of crime victims and their families for retribution? So I think – Do we brush those interests aside? No, of course not, Your Honor. I want to get these questions in, but go ahead. Oh, I just think that under successive petitions, which is his right, you know, if you can lay out the cause and the prejudice and the substantial showing, which we argue that he has done, then that is still an avenue for him. One other point. Again, in response to what Justice McClaren had asked you about the legislative role and our role, the Supreme Court in Spencer said, and I quote, that the court has emphasized that clearly and consistently drawn the line between juveniles and adults for purposes of sentencing at the age of 18. That's Spencer. I think that's – I'm sorry, can you repeat? In Spencer, the court recognized that the Supreme Court, and speaking about the United States Supreme Court, there's a quote, clearly and consistently drawn the line between juveniles and adults for purposes of sentencing at the age of 18. So, again, I think that's going back to, you know, that's what Miller says, but I think that, you know, I just keep saying, they haven't closed the door to that. Like, it is still open. Under the Illinois Constitution, the proportionate penalties clause. Yes, and the Supreme Court cases from earlier in the 2010s. I know I'm out of time. I don't know if I answered all the questions completely. Did you want to comment at all on the newly discovered evidence vis-à-vis the motion's first statements? I would just stand on our briefs on that issue, yeah. Any other questions? Not for me. Okay. Thank you. You'll have an opportunity to make rebuttal. Thank you. Thank you. Mr. Boos, is that how you pronounce it? Boos.  Yes, Your Honor. You may proceed. Thank you.  I have a question. Yes, Your Honor. What derivation is Boos? It is a Danish family. I've heard that there are German roots. Do you know what it might mean? It relates to a conveyance. A conveyance? Thank you. Do you know who Giuseppe Verdi is? Pardon me? Do you know who Giuseppe Verdi is? I can't say I do, Your Honor. He's an Italian composer of opera music. His name translates to Joe Green. May it please the Court. Counsel. Yes, Your Honor. Jesse Lozano was driving down the street in a residential neighborhood. Entirely unprovoked, defendant shot at him five times, striking him in the skull, spine, and back to gain status in the gang. Defendant's 45-year sentence for that murder does not shock the conscience of the community, and so defendant's as-applied challenge to it fails. Defendant does not establish a change for rehabilitative potential, entitles him to different sentencing, indeed insisting he is innocent. Defendant cannot assert that he is. Could I interrupt you and ask you if you would comment on what your opposing counsel has said and indicate how you think that her arguments are weak or inconsistent? In other words, I like to hear something in the nature of a debate rather than a reference to the circumstances of the case. Certainly. Because this case is primarily, I think, a matter of interpretation and constraint insofar as what we are supposed to be doing here. In other words, what's the level or the nature and extent of extrapolation that she's asking for and what you think might be reasonable? So, Your Honor, first of all, defendant cites a need for clarity in an ongoing appeal. The Illinois Supreme Court has been more than clear about how the law applies to this case. Miller, quote, does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause in a successive post-conviction petition, end quote. That is Spencer. That is paragraph 31. That forecloses the claim. As to the limits of the legislature and the judiciary, the legislature has made clear that the parole parameters, which defendant has not properly raised in this appeal. The people are not conceding that that is properly before the court. However, arguing that the parole provisions, which were not made retroactive, must be under the Constitution, again, is not properly raised, but also would violate this court's obligations in how it handles cases. The legislature represents the people. They establish the boundaries for penalties. That is exactly within what they are supposed to be doing. And so when we talk about an as-applied challenge in this case, when we discuss the conscience of the community, the representatives of the people are one of the best sources of confirming where that is. Subsequent to Miller, the legislature enacted legislation, which showed that they are willing to pursue parole possibilities for offenders, but it did not find that the inability to do so before that point shocked the conscience of the community. That is what the outcome of defendant's claim is, is to find that unconstitutional and for this court to reach into that law and rewrite it in order to make it retroactive. That is beyond this court's obligations and responsibilities under the Constitution. The people do emphasize that while defendant relies on Thompson and Harris, Harris itself in paragraph 60 emphasized that the line for between 17 and 18 was the line that Miller established, that that is where the Eighth Amendment applies. If defendant seeks to apply Miller outside of that, such as through an as-applied challenge, then it is strictly as a persuasive authority that there is the idea of some greater rehabilitative potential that they can try to leverage in applying the sentence in their case and establishing that it shocks the community. That does not apply here, though, because the evolving brain science that defendant cites fundamentally states that even though someone committed a crime, we have to evaluate them differently in what that means for their development. In so doing, that person would be understanding that they committed a crime, but they can change. Defendant is not changeable. In an as-applied challenge where defendant insists that he is innocent, he cannot reap the benefits of Miller. Swift is a good example of this. People v. Swift, in which this court explained that there is a problem for a defendant who waits until he has an opportunity moment to accept responsibility in order to claim a rehabilitative shift in who he is as a person so that his original sentence should not have applied under Miller. In trying to reap the benefits of Miller, this court stated that he is, by opportunistically supplying that after a great deal of time that diminishes the ability to seek an as-applied proportionate penalties challenge. Here, defendant doesn't even have that. Here, defendant has no claim to rehabilitation, not just because of his actions immediately after the offense where he committed further gang activity while in jail, but also throughout the pendency of even this claim. He is asserting, and his expert report has emphasized this, that he is denying any responsibility or obligation stemming from this offense. He maintains his innocence. Correct. And he's entitled to his innocence. He is absolutely, but that is in. Miller protections are afforded to people who have pled not guilty and maintained their innocence. Yes, Your Honor. However, its application in saying that this person can turn over a new leaf, under Swift, it matters how and when and if he does so. Well, as Swift, he finally did admit his guilt much, much, much later as an adult. I was on that panel. Yes, Your Honor. As an adult, to take advantage of the emerging adult science. That's what the difference. Here, the defendant is not changing his position. He's insisting he's innocent, and with respect to that, he claims that he was coerced into confessing. And we are not challenging his ability to. There were elements of coercion in pushing him in the interrogation. In the interrogation, there was a false statement about the recording at the podium. Right. And that reflected the same statements that he, in fact, made. They just didn't have a recording of it. Is Dr. Garabino's report on that and suggesting that these elements have led to false confessions, is that new evidence that we could use to say, send a case back for a third stage hearing? Some of it has nothing to do with the defendant. Dr. Garabino cites sexual abuse. He cites physical violence. And there are severe issues with relying on that as a factual basis for an as-applied challenge here. I'll refer to the remainder of my review from the brief. However, because of the many times where Dr. Garabino goes far afield from the facts of this case and the number of times where he cites material that are contradicted by the record and, therefore, are not assumed to be true for purposes of this petition, then, no, there is not a factual basis to find that this sentence shocks the conscience. I'll otherwise refer the court to the brief where there's a further breakdown of those issues. But defendant does bear the burden here. That's the issue on cause and prejudice, is that this is not merely looking for a gist. This is establishing by defendant that there was a legal claim that he was unable to bring before. And he was. He was always able to say that his sentence shocked the conscience, that it did not incorporate his personal characteristics. That's what the Spencer case and all of the subsequent two Miller cases have established in the Illinois Supreme Court, that this is some support. That is not the same as being denied the ability to present the legal claim. And, moreover, Dr. Garabino's report is some support. That is not sufficient either to establish cause. Defendant argues that the legal deficiencies, as enunciated in Spencer, should be somehow combined with the factual assertions in Dr. Garabino's report to establish cause. That is not borne out by the case law. It is more support, so it is not cause. Again, he could have argued his characteristics. He did argue his characteristics as to the second issue repeatedly across several appeals. In the trial court, I'll also note that the same judge heard the sentencing hearing and ruled on the sentencing hearing as handed down the sentence to defendant. So he certainly had all the information about defendant's age. The issue as to cause, though, if I may have a moment. The issue as to cause is not just that the factual assertions in Dr. Garabino's report don't create cause because they are factual, not legal, and that Miller does not provide new legal tools and does not create a new claim, but what defendant is asking for here does deny finality at every point and open the door to endless successive petitions. Taken as true, defendant is stating that there has been new science regarding the mind, that we can have more information about how people develop. That is always happening. And the General Assembly has taken action regarding juveniles who have been sentenced as adults. Correct. And that reflects the contours of where the conscience of the community is. And now a defendant can ask the state's attorney to make a recommendation to lower a defendant's sentence. Correct. There are options. There are things out there even for the defendant here. Including for clemency, Your Honor. So there are safeguards in the system for defendant to pursue. This is not a viable one under the law. Part of the issue with making it viable would be to deny that finality, to deny the court's sentence for not anticipating Miller itself and somehow bulletproofing the sentence by explicitly saying years past that it has incorporated the Miller sentencing provisions. That's not required. And part of the reason why it's not required is that because science is always advancing, I certainly hope, then we will always have more information. And the court has said that is not enough. And so defendant is not allowed to present a, to establish cause of prejudice every time a new scientific position on brain development happens. When Miller has been restricted under the Eighth Amendment to only be, yes, Your Honor. Counsel, do you accept the argument that you should never say never? Almost always, Your Honor. Almost always. Okay. Because this is where your argument seems to be going, which is the term finality is essentially, in my opinion, in the context of what I've been listening to, is never say never. Or, pardon me, when you say never, you mean never. Because there isn't the ability to rehabilitate. There isn't the ability to recognize the rehabilitation through parole. The factual information provided by defendant says that there are some people who do not rehabilitate. So by insisting that everyone must be presumed to rehabilitate is itself contradicted by the support that defendant provides. Although he's got a clean record as a prisoner, doesn't he? I have no information beyond his misconduct while the, before sentencing, Your Honor. I, that would be a. I think Dr. Garbarino talked about his. I might have made a mistake. It's been a while since I read it, but he's got a clean record. Your Honor, Dr. Garbarino also asserted numerous matters that were contradicted by the PSI, the pre-sentence investigation, so that people are not conceding that his review was fully contested. That we didn't reach a hearing. And so that was not fully litigated. However, even aside from that, the uncontested facts, the ones that are not contradicted by the record, are not enough to establish that the sentence shocks the community. In addition to the separation of powers issues that I, I believe I reviewed with Your Honors, the people also state that there is no cause because of the conflation between legal tools and factual ones. Again, the hybridization that takes place in defendant's argument between the new factual support and new legal support aren't borne out by the case law where Spencer, again, established that you need to be denied. You may finish. Thank you. That you need to be denied the ability to pursue a legal claim and lack the legal tools to do so. Any other questions? No. Thank you. Thank you, Your Honors. Thank you. Ms. Olson, you may proceed. Thank you. I just like to respond to a few things the counsel said. Could I ask you to comment on the weaknesses in Mr. Booth's arguments? Yes. So the first thing I would like to respond to is counsel was attacking Dr. Garbarino's report quite a bit, saying that there are things that aren't relevant to Ernesto. I guess the first thing I would say to that is at this stage, you have to take the pleadings as true. They're not rebutted. And so we're simply asking for an evidentiary hearing. And we argue that Ernesto hasn't met that in this case. And so in terms of rehabilitation, we're also not asking that today. That's a question for the future. And the other thing is the recent case law, like Swift, Spencer, again, I would just say, first of all, they are discretionary life sentences, not mandatory like Ernesto's is. And the other thing is I just wanted to respond, Your Honor, about Spencer. In paragraph 34, it does go on to say Miller does not directly apply to Spencer, but this court has recognized that science will help form a basis for Miller may assist emerging adult defendants in support of as-applied proportionate penalty clause challenges. Thus, emerging adults like Spencer, like Ernesto, are able to still assert that. And in Spencer, they ultimately determined that it wasn't a de facto mandatory life sentence because of the parole statute that I mentioned earlier. So, Your Honors, we're not arguing to go against the Illinois Supreme Court. We're arguing that that door has already been opened and that we're following that. The quote that I had read from Spencer was a couple of quotes, but one of them, from Moore, that Miller does not provide cause for a successful petition. Your Honor, the words initial or original don't appear. In Spencer, they don't say anything about it has to be an initial. But that comes from Moore, which we think is inconsistent because Thompson specifically said successive, and that has not been overruled. So that's what I mean about the inconsistencies. And, you know, as of right now, we argue the door remains open. But like I said, this is up on appeal in the Supreme Court. If Your Honors have no further questions, I just conclude that we ask that you reverse a demand for Ernesto to have an evidentiary hearing on these issues. I'm curious, what evidence is going to be presented in the tertiary stage? Sorry, what stage? Pardon? Can you repeat it? I didn't hear you. Any other questions? Thank you. Thank you, Your Honors. We'll take the case under advisement. We'll take a short recess.